UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IRENA DOMKIENE, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) No. 15 C 5732 ) ) Judge Sara L. Ellis |
| MENARDS, INC., | ) ) |
|     Defendant. | ) |

## OPINION AND ORDER

After slipping and falling at one of Defendant Menard, Inc.'s ("Menard") stores in Chicago, Illinois, Plaintiff Irena Domkiene filed this action against Menard, alleging that Menard negligently failed to clean the floor and allowed water to run off its shopping carts, causing her injury.[1] Menard has filed a motion for summary judgment [27]. Because Illinois' natural accumulation rule applies, meaning that Menard had no duty to remove the water that had accumulated in its store's entryway from that day's rain, the Court grants Menard's motion for summary judgment.

## BACKGROUND[2]

On November 22, 2014, Domkiene entered a Menard's store located at 9140 South Harlem Avenue, Chicago, Illinois. It had rained all day, continuing to the time Domkiene arrived at the store. Domkiene entered the Menard's store, walked across a mat, continued into the store, and fell on a linoleum floor. Domkiene admits she was not distracted when she fell.

---

[1] Defendant is named in the complaint as "Menards, Inc." but refers to itself as "Menard, Inc."

[2] The facts in this section are derived from the Joint Statement of Undisputed Material Facts. All facts are taken in the light most favorable to Domkiene, the non-movant. Domkiene also included additional undisputed facts in her response and submitted an expert affidavit with that response. As discussed in the analysis section, these are not properly before the Court.

Although she did not notice water on the floor, she thought she fell on water because it was raining. Indeed, the water had accumulated on the Menard's store's floor because of the rain, coming from two sources. Specifically, mats at the Menard's store entrance would get wet from rain, causing people walking into the store to track water from outside and the water-logged mats into the store. Additionally, customers and employees brought shopping carts, wet from being outside, inside the store that would drip on the floor. Although Domkiene did not notice water dripping from the shopping carts after she fell, Richard Nagel, a Menard's employee who pushed carts into the store that day, remembered the carts dripping water onto the floor.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

I.  **Domkiene's Late Response and Expert Affidavit**

Before addressing the merits of Menard's motion for summary judgment, the Court must address several procedural issues raised in connection with the filing of Domkiene's response. First, Domkiene filed her response a week after the deadline set to do so. Several days before the deadline, she filed a motion for extension of time, indicating that her counsel had numerous summary judgment motions to which he needed to respond in the upcoming weeks. Doc. 29. Domkiene did not notice that motion for presentment, as required by the Local Rules. N.D. Ill. L.R. 5.3(b)(requiring motions to be noticed for presentment within fourteen days after filing); *id.* 78.2 (providing that the Court may on its own initiative deny motions not noticed for presentment). Instead, Domkiene filed her response on the requested date of April 28, 2016. *See* Docs. 32, 33. She also filed Richard Hochgraver's affidavit, dated April 27, 2016, with her response. Doc. 32-2. Hochgraver purports to be an expert in the customs, practices, and standard of care in store management for "handling tracked in water from rainy conditions." *Id.* at 1.

Although the Court had not set a deadline for expert discovery, fact discovery closed on December 31, 2015. Doc. 15. According to the parties' proposed discovery plan, they contemplated completing all discovery, including expert discovery, prior to filing dispositive motions. *See* Doc. 10 at 4. But instead of taking up the issue of expert discovery at the status hearing after fact discovery closed, Menard stated it intended to file for summary judgment and requested a briefing schedule. Domkiene had several opportunities to raise the need for an expert prior to Menard filing its summary judgment motion, particularly in light of this Court's summary judgment procedures, which require the parties to meet and confer and jointly prepare

a statement of undisputed facts. Instead of doing so, Domkiene only disclosed her expert's opinion the day she filed her response, after the parties' joint statement of undisputed facts had already been filed, the Court had ruled on any disputes the parties had concerning these facts, and one week after her response was originally due. *See* Docs. 21, 25, 32, 33. Additionally, her request for an extension of time had not candidly revealed that she needed more time to obtain Hochgraver's affidavit, instead referring to summary judgment deadlines counsel had in other cases. *See* Doc. 29.

Under Rule 26(a)(2), a party cannot rely on an expert affidavit to oppose summary judgment unless it has first disclosed that expert testimony. *Mannoia v. Farrow*, 476 F.3d 453, 456 (7th Cir. 2007); *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). Rule 37(c)(1) provides that a party's failure to make a required disclosure means the party cannot use the information or witness in a motion unless the failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). Here, Domkiene first disclosed Hochgraver as an expert at the same time she filed her response to the summary judgment motion, having delayed her filing to obtain this opinion. This late disclosure did not provide Menard with sufficient time to depose Hochgraver or obtain an expert of its own.[3] Moreover, Domkiene's actions undermined the Court's summary judgment procedures, raising new issues and evidence that may have avoided Menard's motion or at least altered Menard's approach to summary judgment. The Court cannot find Domkiene's actions with respect to disclosing Hochgraver's opinions substantially justified or harmless. Thus, although the Court will consider Domkiene's late-filed response, it will not consider Hochgraver's affidavit. *See Mannoia*, 476 F.3d at 456 (district court was within its

---

[3] Hochgraver's affidavit also does not appear to fully comply with Rule 26(a)(2)(B)'s requirements. *See* Fed. R. Civ. P. 26(a)(2)(B) (requiring expert report to include, among other things, a witness' qualification, a list of other cases in which the witness testified as an expert at trial or by deposition during the previous four years, and the compensation being paid to the expert in the case).

discretion to strike expert's affidavit submitted in opposition to motion for summary judgment where affidavit was disclosed after limited discovery period had ended and plaintiff did not seek relief from court); *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758–59 (7th Cir. 2004) (affirming exclusion of expert testimony at summary judgment stage where plaintiffs knew of need for expert testimony and denied defendants the opportunity to question witnesses in their expert capacity by failing to disclose them as experts until after defendants moved for summary judgment). As a result, the Court disregards any arguments in opposition to Menard's motion for summary judgment that rely on Hochgraver's opinions, such as Domkiene's position that Menard affirmatively caused water to be in the area where Domkiene slipped because it improperly brought wet carts into the store through the front entranceway instead of through a separate entrance.

## II. Merits of Domkiene's Negligence Claim

To succeed on her negligence claim, Domkiene must establish that (1) Menard owed her a duty, (2) Menard breached that duty, and (3) Menard's breach proximately caused her injury. *Rhodes v. Ill. Cent. Gulf R.R.*, 665 N.E.2d 1260, 1267, 172 Ill. 2d 213, 216 Ill. Dec. 703 (1996). Menard argues that Domkiene cannot prevail on her negligence claim because she cannot establish that Menard owed her any duty. Specifically, Menard contends that the natural accumulation rule applies here, under which "a landowner or possessor of real property has no duty to remove natural accumulations of ice, snow, or water from its property." *Bernard v. Supervalu, Inc.*, No. 12-CV-1482, 2013 WL 6050616, at *2 (N.D. Ill. Nov. 14, 2013). The rule extends to "tracks or residue left by customers who have walked through natural accumulations of water, slush, or snow." *Pytlewski v. United States*, 991 F. Supp. 1043, 1047 (N.D. Ill. 1998) (collecting cases).

5

Here, the parties agree that Domkiene fell on water that had accumulated on the floor of the Menard's store as a result of rain—either tracked in by customers or from the shopping carts brought in from outside. Barring Domkiene presenting other evidence that Menard caused an unnatural accumulation of water or that Menard aggravated the natural accumulation of this water, this triggers the natural accumulation rule and warrants entry of summary judgment in Menard's favor. *Bernard*, 2013 WL 6050616, at *3 (citing *Bloom v. Bistro Rest. Ltd. P'ship*, 710 N.E.2d 121, 123, 304 Ill. App. 3d 707, 237 Ill. Dec. 698 (1999); *Bernard v. Sears, Roebuck & Co.*, 519 N.E.2d 1160, 1161–62, 166 Ill. App. 3d 533, 116 Ill. Dec. 945 (1988)). Speculation about the cause of the accumulation does not suffice. *See Good v. Univ. of Chicago Med. Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012) ("[G]uesswork and speculation are not enough to avoid summary judgment."); *Ciciora v. CCAA, Inc.*, 581 F.3d 480, 483 (7th Cir. 2009) ("[M]erely inviting speculation as to the cause of the ice was insufficient to survive summary judgment."); *Frederick v. Prof'l Truck Driver Training Sch., Inc.*, 765 N.E.2d 1143, 1149, 328 Ill. App. 3d 472, 262 Ill. Dec. 535 (2002) (granting summary judgment for defendant where plaintiff failed to present competent evidence to suggest how snow accumulated on step on which he fell).

Despite admitting that the water on which she slipped came from the rain, Domkiene argues that Menard should be found responsible for allowing the water to accumulate because of a design defect—an alleged unevenness in the floor near the entranceway to the store. To support this theory, she cites to Richard Nagel's deposition testimony that the ground by the store entryway, near where the carts were stored, was not level, which allowed puddles to form when it rained. Based on this testimony, Domkiene contends that Menard caused an unnatural accumulation of water in its entryway, bringing water into the area in which she fell when carts

6

passed through the puddle.[4] *See Bloom*, 710 N.E.2d at 123 ("It is not imposing an undue burden on [a landlord] to require him not to add to the difficulties facing Illinois residents from natural accumulations of ice and snow by permitting unnatural accumulations due to defective construction or improper or insufficient maintenance of the premises."). Initially, the facts concerning the levelness of the ground near the entranceway are not properly before the Court; despite apparently being undisputed, they were not included in the parties' joint statement of undisputed material facts, as required by this Court's summary judgment procedures. The Court's procedures are not advisory and so the Court strikes these facts, leaving Domkiene's argument concerning the levelness of the floor unsupported. *See Sweatt v. Union Pac. R.R. Co.*, 796 F.3d 701, 711–12 (7th Cir. 2015) (affirming this Court's summary judgment case management procedures as conforming to Local Rule 56.1); *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008) (district court does not abuse its discretion "when it opts to disregard facts presented in a manner that does not follow [Local Rule 56.1's] instructions").

But even considering these facts and the argument on its merits, Domkiene has failed to create a disputed issue of fact as to whether Menard created an unnatural accumulation of water. Illinois courts have held that to defeat summary judgment in the analogous situation of demonstrating that the "design of a sloping surface created an unnatural accumulation of ice," a plaintiff must present evidence "of the dangerous nature of the slope, that the slope was the proximate cause of the plaintiff's injuries and that the landowner had notice of the defect." *Wells v. Great Atl. & Pac. Tea Co.*, 525 N.E.2d 1127, 1129, 171 Ill. App. 3d 1012, 121 Ill. Dec. 820 (1988) (plaintiff did not produce sufficient evidence of an excessive slope where plaintiff's

---

[4] Domkiene does not appear to argue that the low spot caused water to puddle and then flow across the floor of the store, instead focusing on the fact that the carts that went through the puddle further tracked in water that would not have otherwise been there. But Domkiene has already admitted that the carts were wet from coming from outside.

expert stated that parking lot surface "'pitched downward' from the perimeter towards the center of the lot"); *see also Crane v. Triangle Plaza, Inc.*, 591 N.E.2d 936, 940–41, 228 Ill. App. 3d 325, 169 Ill. Dec. 432 (1992) (plaintiffs did not present sufficient evidence to link alleged unnatural accumulation of snow and the ice allegedly created by it to survive summary judgment, noting that "the mere existence of a slope in the lot is not enough to defeat a motion for summary judgment"). All Domkiene has presented is Nagel's general statement concerning the unevenness of the ground near the store's entryway. Nagel's statement does not meet Domkiene's burden—Nagel is not an expert and provides no details from which a juror could infer the dangerous nature of the surface or a direct link between the low point and her injury.[5] *See Madeo v. Tri-Land Props., Inc.*, 606 N.E.2d 701, 705, 239 Ill. App. 3d 288, 179 Ill. Dec. 869 (1992) ("Other than stating, in essence, that 'water flows downhill,' plaintiff provided no evidence as to how the grade in the lot could have caused water from the snow bank to reach the spot where plaintiff slipped. . . . [Plaintiff] must either show a direct link between defendants' snow piles and the ice that caused her to slip, or she must provide circumstantial evidence through an expert."); *Hoiseth v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 562 N.E.2d 602, 605–06, 205 Ill. App. 3d 323, 150 Ill. Dec. 72 (1990) (plaintiff failed to establish that slope was unreasonable and dangerous, where plaintiff "offered no evidence as to the grade of the slope" or any expert testimony, contrasting case with that of *McCann v. Bethesda Hospital*, 400 N.E.2d 16, 80 Ill. App. 3d 544, 35 Ill. Dec. 879 (1979), where the plaintiff presented an affidavit of a licensed architect who concluded that the incline of the parking lot was excessive and would have caused an unnatural accumulation of ice where the plaintiff fell). Because Illinois law

---

[5] The Court cannot determine from the parties' presentations and Nagel's testimony where the low spot was in relation to where Domkiene fell. Menard argues that, based on the surveillance footage and Nagel's description, water from the low spot could not have reached the area where Domkiene fell. This highlights the proximate cause issues with Domkiene's argument.

requires the plaintiff to provide more detailed testimony concerning design defects or unnatural accumulations to avoid application of the natural accumulation rule at the summary judgment stage, the Court cannot find that Nagel's testimony concerning the low spot, which allegedly caused shopping carts to track in additional water, would create a genuine issue of fact. *See Rush v. Simon & Mazian, Inc.*, 513 N.E.2d 100, 102–03, 159 Ill. App. 3d 1081, 111 Ill. Dec. 854 (1987) (plaintiff's photograph showing puddle of water at sidewalk intersection where he fell did not demonstrate "the origin of the ice or the cause of the depression, *e.g.,* faulty construction, natural causes, or bad design, as required by law"); *Keim v. Union Planters Bank*, No. 07-3065, 2008 WL 2224901, at *2–3 (C.D. Ill. May 27, 2008) (rejecting plaintiff's attempt to establish exception to natural accumulation rule that snow and ice on walkway was unnatural accumulation based on his own testimony of a dip or slant to sidewalk that created a runoff).

Thus, the Court is left only to consider the evidence that the water on which Domkiene slipped came from customers tracking in water from outside or from the carts brought into the store from outside. Courts have specifically found that both sources qualify as natural accumulations or continuations of natural accumulations. *See Bernard*, 2013 WL 6050616, at *3 (rejecting plaintiff's argument that water dripping off shopping carts was an unnatural accumulation or an aggravation of a natural accumulation); *Choi v. Commonwealth Edison Co.*, 578 N.E.2d 33, 37, 217 Ill. App. 3d 952, 160 Ill. Dec. 854 (1991) (puddles resulting from transporting ice-covered pipes indoors were "continuation of a natural accumulation" and thus did not trigger owner's duty to maintain safe workplace). Moreover, it makes no difference if Menard's employees, as opposed to customers, brought the carts into the store—water would have dripped off the carts regardless.[6] *See Swartz v. Sears, Roebuck & Co.*, 636 N.E.2d 642,

---

[6] The surveillance footage of the incident submitted in connection with Domkiene's response to the summary judgment motion shows both customers and employees bringing carts into the Menard's store.

9

651, 264 Ill. App. 3d 254, 201 Ill. Dec. 210 (1993) (in analogous situation concerning water tracked in by car into service area, rule of non-liability extended to employees who drove the cars that tracked water into the area because "[r]egardless of who drove the cars into the service area, the result would have been the same: water would have dripped off the cars"). Nor can Menard be found liable for aggravating the situation by allowing saturated mats to remain in its entranceway—the water is still considered a natural accumulation.[7] *See Pytlewski*, 991 F. Supp. at 1047–48 (defendant did not voluntarily undertake to remove water because of presence of mats in store, collecting cases); *Reed v. Galaxy Holdings, Inc.*, 914 N.E.2d 632, 637, 394 Ill. App. 3d 39, 333 Ill. Dec. 213 (2009) ("Allowing saturated mats to remain in an entranceway does not by itself, however, transform the tracked in water into an unnatural accumulation nor suggest that defendant aggravated the water's natural accumulation."). Because there is no genuine issue of material fact as to whether the water on the floor qualified as a natural accumulation, the natural accumulation rule applies here.[8]

---

*See* Ex. A to Doc. 32. This undermines Domkiene's contention that Menard "has unfettered control over the manner in which its shopping carts are brought back into the store." Doc. 33 at 4.

[7] The Court also does not consider Domkiene's argument that Menard should have had additional matting in place, as her only support for that is Hochgraver's stricken affidavit.

[8] Even were the Court to consider Hochgraver's affidavit, his opinions would not alter the outcome. Hochgraver opines that Menard violated a standard of care in that it should have addressed the hazard—here, the accumulating water from the rain—in a different way. But "it is irrelevant to the antecedent duty question whether the standard of care required [Menard] to 'abate the hazard" and instead "bear[s] on whether a breach occurred if [Menard] had a duty of care." *Heck v. Simplexgrinnell LP*, No. 14 C 5491, 2016 WL 704811, at *9 (N.D. Ill. Feb. 23, 2016). Because the natural accumulation rule establishes that Menard had no legal duty to its customers, Hochgraver's opinion that Menard violated industry standards would make no difference to the outcome of the case. Additionally, to the extent Hochgraver argues that Menard violated its own policies, such an opinion is also irrelevant to a determination of whether Menard had a duty to Domkiene with respect to the water on the floor of its store. *See Pytlewski*, 991 F. Supp. at 1050 (rejecting argument that defendant's handbooks created duty to remove tracked-in water, noting that "[a] finding that such a manual or policy in and of itself created a legal duty on the part of the business to remove natural accumulations would discourage businesses from producing or formulating such guidelines, which would be detrimental to the general public's best

Domkiene argues, however, that Menard alternatively owed her a duty to provide her with a reasonably safe means of ingress and egress from the store, a duty which the natural accumulation rule does not abrogate. *See* Doc. 33 at 6 (citing *Radovanovic v. Wal-Mart Stores E., Inc.*, No. 04 C 0014, 2006 WL 305890, at *3–4 (N.D. Ill. Feb. 2, 2006), and *Lee v. Phillips Petroleum Co.*, No. 00 C 4070, 2001 WL 604189, at *6 (N.D. Ill. May 31, 2001)). But the Illinois Appellate Court has more recently held that "[a]n owner or operator is not liable for injuries sustained due to a natural accumulation of tracked in water *even* at the sole point of egress or ingress." *Reed*, 914 N.E.2d at 638 (emphasis added) (collecting cases); *id.* at 640 (rejecting *Radovanovic*'s adoption of the "prescribed means" exception, stating that "Illinois does not adhere to that exception"). Those cases that have applied the so-called "prescribed means exception" that Domkiene advocates have done so where there has been evidence of an unnatural accumulation or that the defendant aggravated the natural accumulation of the water, ice, or snow, which would render the natural accumulation rule inapplicable in the first place. *See Lee*, 2001 WL 604189, at *6 (finding "exception" to natural accumulations rule implicated where plaintiffs argued that store used inappropriate tile at entrance to premises, stating "courts which have applied the 'natural accumulations' rule have often noted an exception, where a store owner, who generally has no duty to remove tracked-in water, can be liable if the plaintiff specifically alleges that the material used in the flooring is especially slipper and dangerous when wet" (collecting cases)). But here, as discussed above, no such evidence exists, making the "exception" inapplicable.

---

interest" and "would also create a new exception to Illinois' natural accumulations rule, an exception which has the potential to swallow the rule almost whole").

Because Domkiene has not demonstrated a genuine issue of material fact as to whether Menard owed her a duty, she cannot establish a required element of her negligence claim. Thus, the Court grants summary judgment to Menard.

## CONCLUSION

For the foregoing reasons, the Court grants Defendant Menard, Inc.'s motion for summary judgment [27]. The Court enters judgment for Menard, Inc. on Domkiene's complaint. This case is terminated.

Dated: September 6, 2016

_____
SARA L. ELLIS
United States District Judge